**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NANA YAW MANTE, formerly known as DALETH ODURO MANTE,**<br><br>**Defendant.** | ) | Civil Case No.<br><br>**COMPLAINT TO REVOKE NATURALIZATION** |

The United States of America brings this civil action against Defendant Nana Yaw Mante, formerly known as Daleth Oduro Mante, to revoke his naturalized U.S. citizenship under 8 U.S.C. § 1451(a). The United States alleges that Defendant illegally procured his naturalization and that he willfully misrepresented and concealed material facts in applying to naturalize.

## PRELIMINARY STATEMENT OF THE CASE

Defendant came to the United States from Ghana, entering without inspection in 1994. Using the name Daleth Oduro Mante, Defendant applied to the former Immigration and Naturalization Service ("INS")[1] for an immigration

[1] On March 1, 2003, INS ceased to exist as an independent agency within the Department of Justice, and most of its functions were transferred to the newly

benefit. INS found him ineligible for the benefit and ordered him to appear before an immigration judge and show cause why he should not be deported from the United States.

Defendant participated in deportation proceedings, with counsel, and was ultimately ordered to be deported. INS served Defendant with a Notice to Deportable Alien to Surrender, which Defendant received and signed for. But Defendant failed to appear for deportation at the appointed time and place.

Instead, Defendant remained in the United States and applied for permanent residence using a different identity, including a different name—Nana Yaw Mante—and a different birth date. Later, still using the Nana Yaw Mante identity, Defendant applied for naturalization and was admitted as a citizen of the United States in 2004.

Throughout the naturalization process, Defendant concealed his immigration history and use of a different identity. Defendant's conduct statutorily barred him from becoming a U.S. citizen, rendering his naturalization unlawfully procured. Moreover, Defendant's conduct demonstrates that he procured his naturalization by concealment and willful misrepresentation. With the attached affidavit showing good cause, the United States requests that this

---

formed Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (Nov. 25, 2002). The United States will reference INS throughout where factually appropriate.

Court revoke and set aside the order admitting Defendant to citizenship and cancel his certificate of naturalization.

## JURISDICTION AND VENUE

1. This is an action under 8 U.S.C. § 1451(a) to revoke and set aside the order admitting Defendant to U.S. citizenship and to cancel Defendant's Certificate of Naturalization ending in 264.

2. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 for this cause of action under 8 U.S.C. § 1451(a).

3. Venue is proper in this District under 8 U.S.C. § 1451(a) because Defendant resides in this federal judicial district.

## PARTIES

4. Plaintiff is the United States of America.

5. Defendant Nana Yaw Mante, formerly known as Daleth Oduro Mante, was purportedly born in Ghana and is a naturalized U.S. citizen, whose last known address is in Acworth, Georgia.

6. Nana Yaw Mante and Daleth Oduro Mante are one and the same person.

## FACTUAL ALLEGATIONS

7. The affidavit of an Adjudication Officer with United States Citizenship and Immigration Services ("USCIS"), an agency with the United States Department of Homeland Security ("DHS"), showing good cause for this action, as required by

8 U.S.C. § 1451(a), is attached hereto as **Exhibit 1**. It is cited throughout the Complaint as the "AGC."

## I. Defendant's Immigration History Using the Daleth Oduro Mante Identity

8. On August 24, 1994, Defendant was fingerprinted in connection with a yet to be filed immigration benefit application. AGC ¶ 1, Ex. A.

9. On August 29, 1994, Defendant filed an immigration benefit application with INS and was assigned an alien registration number ("A-Number") ending in 227. AGC ¶ 2.

10. Defendant stated in this application that his name was Daleth Oduro Mante and that he had been born in Ghana in 1969. AGC ¶ 2.

11. INS found Defendant ineligible for the immigration benefit and referred his case to immigration court. AGC ¶ 3.

12. On October 10, 1995, INS issued to Defendant a Form I-221, Order to Show Cause and Notice of Hearing, charging him as deportable from the United States. AGC ¶ 4, Ex. D. INS personally served Defendant with the Form I-122 on October 11, 1995, directing Defendant to appear before the immigration judge on January 30, 1996. AGC ¶ 4.

13. In 1996, Defendant appeared before the immigration judge in deportation proceedings on several occasions. AGC ¶ 6, Exs. E and F.

14. As part of the deportation proceedings, a baptismal certificate was filed that indicated Defendant's:

(i) Current legal name as Daleth Oduro Mante;

(ii) Date of birth as a date in 1969;

(iii) Place of birth as Accra, Ghana; and

(iv) Parents as Daniel Mante and Comfort Agyei.

AGC ¶ 7, Ex. G.

15. On December 1, 1997, Defendant failed to appear for his merits hearing, and the immigration judge ordered him deported to Ghana *in absentia*. AGC ¶ 8, Ex. H.

16. On December 19, 1997, INS issued a Warning to Alien Ordered Removed or Deported. AGC ¶ 9, Ex. B.

17. On December 17, 1998, INS served Defendant, via certified mail, with Form I-166, Notice to Deportable Alien to Surrender, ordering Defendant to appear on January 26, 1999, for deportation to Ghana. AGC ¶ 10, Ex. I.

18. Immigration court hearing notices and the notice to surrender were addressed to Defendant, under the name Daleth Oduro Mante, at 1530 Archer Road #1G, Bronx, New York 10462. AGC ¶¶ 6, 10, Exs. F, I, J.

19. On December 29, 1998, Defendant signed the certified mail return receipt for the notice to surrender. AGC ¶ 11, Ex. J.

20. However, Defendant failed to appear for deportation at the appointed time and place, rendering his deportation order outstanding. AGC ¶ 12, Ex. C.

21. USCIS has no evidence that Defendant departed the United States pursuant to the deportation order. AGC ¶ 13.

**II. Defendant's Immigration History Using the Nana Yaw Mante Identity**

22. While his deportation proceeding was pending, on October 17, 1997, Defendant—now using the name "Nana Yaw Mante"—was fingerprinted in connection with a yet to be filed Form I-485, Application to Register Permanent Residence or Adjust Status. AGC ¶ 14, Ex. A.

23. On October 28, 1997, using the Nana Yaw Mante identity, Defendant filed a Form I-485 with INS, and was assigned an A-Number ending in 185. AGC ¶ 15, Ex. K. On his Form I-485, signed under penalty of perjury, Defendant represented, among other things, that:

(i) His current legal name was Nana Y. Mante;

(ii) He was born in Ghana in 1971;

(iii) His address was 1530 Archer Road, Apt. #1G, Bronx, NY 10462;

(iv) His mother's first name was Comfort, and his father's first name was Daniel; and

(v) He was not then in deportation proceedings.

AGC ¶ 16, Ex. K.

24. On October 20, 1997, Defendant completed Form G-325A, Biographic Information, in which he represented, among other things, that:

(i) His name was Nana Yaw Mante;

(ii) He was born in Ghana in 1971;

(iii) His address was 1530 Archer Road, Apt. #1G, Bronx, NY 10462;

(iv) His mother's name was Comfort Agyei, and his father's name was Daniel Mante; and

(v) He had used no other names.

AGC ¶ 17, Ex. M.

25. Defendant later filed Supplement A to Form I-485 in which he further affirmed information that he had provided in his Form I-485 and Form G-325A. AGC ¶ 18, Ex. N.

26. On September 30, 1998, INS approved Defendant's Form I-485, thereby granting him lawful permanent residence status. AGC ¶ 22, Ex. Q.

27. Also on September 30, 1998, Defendant provided a fingerprint on Form I-551, Card Data Collection, that was used to produce his permanent resident card. AGC ¶ 22, Ex. A.

28. On September 8, 2003, Defendant filed Form N-400, Application for Naturalization, based on having been a lawful permanent resident for a period of five years. AGC ¶ 23, Ex. R. Defendant signed his Form N-400, certifying under penalty of perjury that its contents were "true and accurate." AGC ¶ 23, Ex. R.

29. On his Form N-400, signed under penalty of perjury, Defendant represented, among other things, that:

(i) His current legal name was Nana Yaw Mante;

(ii) He had never used any other names;

(iii) His date of birth was in 1971;

(iv) He had never given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal;

(v) He had never lied to any U.S. Government official to gain entry or admission into the United States; and

(vi) He had never been ordered to be removed, excluded, or deported from the United States.

AGC ¶ 23, Ex. R.

30. On November 19, 2003, Defendant was fingerprinted in connection with his N-400 application. AGC ¶ 24, Ex. A.

31. On June 22, 2004, a USCIS officer interviewed Defendant to determine his eligibility for naturalization. AGC ¶ 25, Exs. R and S.

32. USCIS approved Defendant's Form N-400 on August 12, 2004. AGC ¶ 26, Exs. R, S.

33. On August 23, 2004, Defendant took the Oath of Allegiance as Nana Yaw Mante and was admitted as a citizen of the United States. AGC ¶ 27, Ex. T.

34. Defendant was then issued Certification of Naturalization ending in 264. AGC ¶ 27, Ex. U.

**III. “Nana Yaw Mante” and “Daleth Oduro Mante” are the Same Person**

35. Nana Yaw Mante, formerly known as Daleth Oduro Mante, are one and the same person. AGC p. 2.

36. Fingerprint evidence analyzed in a forensic laboratory demonstrates that the same individual submitted fingerprints under both the “Nana Yaw Mante” and “Daleth Oduro Mante” identities. AGC p. 2, Ex. A.

37. In addition to the forensic fingerprint evidence, certain information submitted under the identity of Daleth Oduro Mante mirrors information represented by Nana Yaw Mante on several documents. Among other characteristics, both identities share the same:

- Parents, Daniel Mante and Comfort Agyei (*compare* AGC Ex. G *with* AGC Ex. M);
- Address in Bronx, NY (*compare* AGC Exs. F, I, J *with* AGC Exs. K, M); and
- Place of birth in Ghana (*compare* AGC Ex. G *with* AGC Exs. K, M).

## GOVERNING LAW

### I. Congressionally Imposed Prerequisites to the Acquisition of Citizenship

38. No alien has a right to naturalization "unless all statutory requirements are complied with." *United States v. Ginsberg*, 243 U.S. 472, 474–75 (1917).

39. The Supreme Court has underscored that "[t]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981); *see also id.* ("An alien who seeks political rights as a member of this Nation can rightfully obtain them only upon the terms and conditions specified by Congress.") (quoting *Ginsberg*, 243 U.S. at 474)).

40. Under the first ground for denaturalization, illegal procurement, citizenship is "illegally procured" if the applicant failed to comply with any of the congressionally imposed prerequisites to the acquisition of citizenship. *Fedorenko*, 449 U.S. at 506.

41. Among other prerequisites, an applicant for naturalization must demonstrate that he or she has been "lawfully admitted for permanent residence." 8 U.S.C. § 1427(a)(1); *see also* 8 U.S.C. § 1429.

42. The term "lawfully admitted for permanent residence" means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws[.]" 8

U.S.C. § 1101(a)(20). Thus, for an alien to be "lawfully admitted," his adjustment to lawful permanent resident status must be "in compliance with the substantive requirements of the law." *Reganit v. Sec'y*, 814 F.3d 1253, 1257 (11th Cir. 2016) (citation modified); *see also Savane v. Sec'y United States Dep't of Homeland Sec.*, 164 F.4th 93, 98 (3d Cir. 2026) ("A grant of permanent resident status does not meet the standard of 'lawful admission' if the applicant was not legally entitled to it for any reason. So lawful admission denotes compliance with substantive legal requirements, not mere procedural regularity.") (citation modified). Thus, even "an alien whose status was mistakenly adjusted to that of a lawful permanent resident was not an alien lawfully admitted for that purpose." *Reganit*, 814 F.3d at 1257.

43. To be lawfully admitted as a permanent resident, an alien must be, among other requirements, "admissible." *See* 8 U.S.C. § 1255(a) (requiring that an alien be "eligible to receive an immigrant visa and [] admissible to the United States for permanent residence").

44. An alien is rendered "inadmissible" if he or she, "by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter." 8 U.S.C. § 1182(a)(6)(C)(i).

45. Another requirement to be naturalized is that an alien "during all periods referred to in [8 U.S.C. § 1427(a)] has been and still is a person of good moral character[.]" 8 U.S.C. § 1427(a).

62. The required statutory period for good moral character begins five years before the date an applicant files the application for naturalization and continues until the applicant takes the oath of allegiance and becomes a U.S. citizen. 8 U.S.C. § 1427(a); 8 C.F.R. § 316.10(a)(1).

63. Congress enumerated grounds for finding lack of good moral character and created a "catch-all" provision, which states, "[t]he fact that any person is not within any of the [statutorily described] classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f).

64. Individuals who commit unlawful acts adversely reflecting upon their moral character cannot meet the good moral character requirement, unless they prove that extenuating circumstances exist. *See* 8 U.S.C. § 1101(f); 8 C.F.R § 316.10(b)(3)(iii).

65. "A conviction during the statutory period is not necessary for a finding that an applicant lacks good moral character . . . it is enough that the offense was committed during that time." *United States v. Zhou*, 815 F.3d 639, 644 (9th Cir.

2016) (quoting *United States v. Suarez*, 664 F.3d 655, 661 (7th Cir. 2011) (citation modified)).

**II. The Denaturalization Statute**

67. Recognizing that there are situations where an individual has naturalized despite failing to comply with all congressionally imposed prerequisites to the acquisition of citizenship or by concealing or misrepresenting facts that are material to the decision on whether to grant him or her naturalization application, Congress enacted 8 U.S.C. § 1451.

68. 8 U.S.C. § 1451(a) provides, in part: "It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation[.]"

69. Under 8 U.S.C. § 1451(a), this Court must revoke an order of naturalization and cancel the individual's Certificate of Naturalization if his naturalization was either:

a. illegally procured, or

b. procured by concealment of a material fact or by willful misrepresentation.

70. Naturalization is "illegally procured" when there is a failure to comply with any of the congressionally imposed prerequisites to the acquisition of citizenship. *Fedorenko*, 449 U.S. at 506.

71. Naturalization is "procured by concealment of a material fact or by willful misrepresentation" when: (1) the naturalized citizen misrepresented or concealed some fact during the naturalization process; (2) the misrepresentation or concealment was willful; (3) the fact was material; and (4) the naturalized citizen procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States*, 485 U.S. 759, 767 (1988).

72. Where the government establishes that the defendant's citizenship was procured illegally or by concealment of a material fact or by willful misrepresentation, "district courts lack equitable discretion to refrain from entering a judgment of denaturalization." *Fedorenko*, 449 U.S. at 517.

## CAUSES OF ACTION

## COUNT I

## ILLEGAL PROCUREMENT OF NATURALIZATION
**Not Lawfully Admitted for Permanent Residence**
**(Final Order of Deportation Outstanding at Adjustment)**

73. The United States re-alleges and incorporates by reference the foregoing paragraphs.

74. Defendant illegally procured his naturalization because he was not "lawfully admitted for permanent residence."

75. Although INS granted Defendant's Form I-485 on September 30, 1998, thus according him lawful permanent resident status, it had no jurisdiction to do so.

76. At the time of Defendant's adjustment of status to permanent resident, as is also true today, the immigration court had exclusive jurisdiction over applications for adjustment of status filed by applicants in deportation or removal proceedings, including those with a final order of deportation or removal. *See* 8 C.F.R. § 1245.2(a)(1)(i) ("In the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file."); 62 Fed. Reg. 10312, 10383 (Mar. 6, 1997) (revising 8 C.F.R. § 245.2(a)(1) to provide, in relevant part: "After an alien, other than an arriving alien, is in

deportation or removal proceedings, his or her application for adjustment of status under section 245 of the Act or section 1 of the Act of November 2, 1966 shall be made and considered only in those proceedings.”).

77. Defendant was in deportation proceedings under the identity of Daleth Oduro Mante as of October 1995 and was under a final order of deportation as of December 1, 1997. AGC ¶ 30.

78. These deportation proceedings were not suspended, nor was Defendant otherwise exempted. *See* 8 C.F.R. § 1245.1(c)(8)(ii).

79. The immigration judge presiding over Defendant’s deportation proceedings—not INS—had exclusive jurisdiction to adjudicate Defendant’s Form I-485.

80. Despite his ongoing deportation proceeding (under the Daleth Oduro Mante), Defendant filed his Form I-485 on October 28, 1997 (under the name Nana Yaw Mante). *See* AGC ¶ 15, Ex. K.

81. Because Defendant misrepresented his identity and immigration history in his Form I-485, INS was not aware of the deportation proceedings or the order of deportation when it granted Defendant’s Form I-485. *See* AGC ¶ 30.

82. Because INS was not aware that Defendant was subject to deportation proceedings or an outstanding order of deportation under another name, it approved his application for adjustment of status on September 30, 1998. Had

INS been aware that Defendant was subject to deportation proceedings, it would not have approved his application for adjustment of status. AGC ¶ 30.

83. Because the immigration court had exclusive jurisdiction over Defendant's Form I-485 at the time it was approved by INS, Defendant was not lawfully admitted for permanent residence; therefore, Defendant illegally procured his naturalization. AGC ¶ 31.

84. Because Defendant illegally procured his naturalization, this Court must revoke that naturalization as provided for in 8 U.S.C. § 1451(a).

## COUNT II

### ILLEGAL PROCUREMENT OF NATURALIZATION
### Not Lawfully Admitted for Permanent Residence
### (Inadmissible Based on Fraud or Misrepresentation)

85. The United States re-alleges and incorporates by reference the foregoing paragraphs.

86. To be lawfully admitted as a permanent resident, an alien must be, among other requirements, "admissible." 8 U.S.C. § 1255(a).

87. An alien is rendered "inadmissible" if he or she, "by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter." 8 U.S.C. § 1182(a)(6)(C)(i).

88. Defendant was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) at the time of his adjustment to permanent resident status because he both sought to procure, and did procure, lawful permanent resident status by fraud or by willfully misrepresenting material facts. AGC ¶ 36.

89. In October 1997, Defendant applied for admission as a lawful permanent resident using a different identity and date of birth than those which he used in 1994, representing that he had not used any other names and was not then in deportation proceedings.

90. Defendant knew that those representations about his identity and immigration history were false; he was the same person as the Daleth Oduro Mante then in deportation proceedings, he understood the English language, and he participated in the deportation proceedings with counsel representing him. *See* AGC Exs. D, E, F, H.

91. Defendant thus willfully misrepresented his identity and his immigration history in order to procure lawful permanent resident status.

92. Defendant's misrepresentations about his identity and immigration history were material to determining his eligibility for lawful permanent residence.

93. Because of Defendant's misrepresentations, INS was unaware of the deportation proceedings and the outstanding deportation order.

94. Thus, at the time Defendant was admitted as a lawful permanent resident, Defendant was inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C)(i).

95. Because Defendant was not lawfully admitted for permanent residence, Defendant was ineligible for naturalization under 8 U.S.C. § 1429.

96. Because Defendant was ineligible for naturalization, he illegally procured his naturalization.

97. Because Defendant illegally procured his naturalization, this Court must revoke that naturalization as provided for in 8 U.S.C. § 1451(a).

## COUNT III

### ILLEGAL PROCUREMENT OF NATURALIZATION
### Lack of Good Moral Character
### (Unlawful Acts)

98. The United States re-alleges and incorporates by reference the foregoing paragraphs.

99. An applicant for naturalization must satisfy the statutory requirement of demonstrating that he is a person of good moral character for the five-year period before he filed his naturalization application, and until the time he becomes a naturalized U.S. citizen. 8 U.S.C. § 1427(a); 8 C.F.R. § 316.10(a)(1).

100. Defendant was required to establish that he was a person of good moral character from September 8, 1998, when he applied for naturalization, until August 23, 2004, the date he became a U.S. citizen.

101. Defendant was statutorily precluded from establishing the good moral character necessary to naturalize on account of his unlawful acts during the statutory period—specifically, knowingly making written false statements under penalty of perjury with respect to material facts in documents required by the immigration laws and knowingly presenting such documents, in violation of 8 U.S.C. § 1546, and concealing material facts and making materially false statements in violation of 18 U.S.C. § 1001(a)(1)–(3).

102. During the statutory period, Defendant knowingly made written false statements under penalty of perjury with respect to material facts in his Form N-400, including that:

a. He had never used any other names;

b. He had never given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion or removal;

c. He had never lied to any U.S. Government official to gain entry or admission into the United States; and

d. He had never been ordered to be removed, excluded, or deported from the United States.

*See* AGC Ex. R.

103. Because he knowingly made these false statements under oath in his Form N-400, in violation of 8 U.S.C. § 1546 and 18 U.S.C. § 1001(a)(1)–(3), Defendant was barred under 8 U.S.C. § 1101(f) and 8 C.F.R § 316.10(b)(3)(iii) from showing the good moral character necessary to naturalize.

104. Because Defendant was not a person of good moral character, he was ineligible for naturalization under 8 U.S.C. § 1427(a)(3).

105. Because he was ineligible to naturalize, Defendant procured his citizenship illegally.

106. Because he procured his citizenship illegally, this Court must revoke his citizenship, as provided for by 8 U.S.C. § 1451(a).

## COUNT IV

### PROCUREMENT OF UNITED STATES CITIZENSHIP BY CONCEALMENT OF A MATERIAL FACT OR WILLFUL MISREPRESENTATION

107. The United States re-alleges and incorporates by reference the foregoing paragraphs.

108. Under 8 U.S.C. § 1451(a), this Court must revoke Defendant's citizenship and cancel his Certificate of Naturalization if he procured his naturalization by concealment of a material fact or by willful misrepresentation.

109. Throughout the naturalization process, Defendant willfully misrepresented and concealed facts related to his use of an alternate identity and

his immigration history. Specifically, Defendant misrepresented on his Form N-400 that he had never used other names; that he had never given false testimony for the purpose of obtaining any immigration benefit or to prevent deportation, exclusion, or removal; that he had never lied to any U.S. government official to gain entry or admission into the United States; and that he had never been ordered to be removed, excluded, or deported from the United States. *See* AGC Ex. R.

110. Defendant made the misrepresentations and concealments identified in the foregoing paragraph deliberately and voluntarily, despite knowing that such representations were false and misleading. Accordingly, these misrepresentations and concealments were willful.

111. Defendant's false statements and testimony about these matters were material to determining his eligibility for naturalization. *See* AGC ¶¶ 30, 43.

112. Defendant's false statements and testimony had the natural tendency to influence a decision by USCIS to approve his Form N-400, and enabled Defendant to procure his naturalization, because, as shown above, the concealed and misrepresented facts rendered Defendant ineligible for naturalization, and USCIS would have denied the N-400 application had he been truthful. *See* AGC ¶¶ 43–44.

113. Because Defendant procured his naturalization by concealment of material facts and willful misrepresentations, this Court must revoke his citizenship under 8 U.S.C. § 1451(a).

## PRAYER FOR RELIEF

**WHEREFORE**, the United States respectfully requests:

1. A declaration that Defendant illegally procured his citizenship;

2. A declaration that Defendant procured his citizenship by concealment of material facts and by willful misrepresentation;

3. Judgment revoking and setting aside the order admitting Defendant to citizenship and canceling Certificate of Naturalization ending in 264, effective as of the original date of the order and certificate, August 23, 2004.

4. Judgment forever restraining and enjoining Defendant from claiming any rights, privileges, benefits, or advantages related to U.S. citizenship that he obtained as a result of his August 23, 2004, naturalization;

5. Judgment requiring Defendant to surrender and deliver, within ten days of the entry of judgment against him, his Certificate of Naturalization ending in 264 and any copies thereof in his possession—and to make good faith efforts to recover and immediately surrender any copies thereof that he knows are in the possession of others—to the Acting Attorney General, or his designated representative, including undersigned counsel;

6. Judgment requiring Defendant to surrender and deliver, within ten days of the entry of judgment against him, any other indicia of U.S. citizenship, including, but not limited to, U.S. passports (whether valid or expired), U.S. passport cards (whether valid or expired), and Enhanced Driver's Licenses (whether valid or expired), and other relevant documents, whether current or expired, and any copies thereof in his possession—and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession of others—to the Acting Attorney General, or to his designated representative, including undersigned counsel; and

7. Judgment granting the United States such other relief that may be lawful and proper in this case.

Dated: July 1, 2026.

Respectfully submitted,

THEODORE S. HERTZBERG
*United States Attorney*

*/s/ Fiona O'Carroll*
FIONA O'CARROLL
*Assistant U.S. Attorney*
Georgia Bar No. 442663
ANTHONY C. DECINQUE
*Assistant U.S. Attorney*
Georgia Bar No. 130906
United States Attorney's Office
600 U.S. Courthouse

75 Ted Turner Drive SW
Atlanta, Georgia 30303
(404) 581-6364
fiona.o'carroll@usdoj.gov
anthony.decinque@usdoj.gov

*Counsel for the United States*